IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

CARLOS LINDSEY,

                Plaintiff,

  v.                                                                   OPINION & ORDER

GARY BOUGHTON, TIMOTHY HAINES,                17-cv-52-jdp
MARK KARTMAN, and JEROME SWEENEY,

                Defendants.
---

Carlos Lindsey is incarcerated at the Wisconsin Secure Program Facility (WSPF). Lindsey alleges that when correctional officers use pepper spray against other inmates, the ventilation system redirects the pepper spray into all nearby cells. As a result, Lindsey contends that he is exposed to pepper spray in violation of the Eighth Amendment. I allowed Lindsey to proceed against WSPF officials on conditions-of-confinement and excessive-force claims. Dkt. 9; Dkt. 26.

The parties have filed cross motions for summary judgment. Dkt. 41; Dkt. 54. Because no reasonable juror could conclude that Lindsey experienced more than temporary discomfort, and because no reasonable juror could find that officers acted with malice or intent to cause harm, I will grant summary judgment in defendants' favor. Lindsey has also filed a motion to compel discovery, Dkt. 38, which I will deny.

MOTION TO COMPEL

As a preliminary matter, Lindsey contends that defendants have not sufficiently responded to his interrogatories. Dkt. 38. In particular, Lindsey lists a number of incidents in

which pepper spray was used, and for each he asks for (1) an explanation of why officers resorted to pepper spray; and (2) an explanation of the steps taken by officers when using pepper spray. Defendants responded to these interrogatories by explaining WSPF's use-of-force procedures and providing Lindsey with incident reports that document the events of the dates in question. Dkt. 40-2.

When appropriate, a party may respond to an interrogatory by producing relevant business records. Fed. R. Civ. P. 33(d). Because the information that Lindsey seeks is adequately described in the incident reports, his motion to compel is denied.

UNDISPUTED FACTS

I draw the following facts from the parties' summary judgment materials. The facts are undisputed except where noted.

Lindsey is incarcerated at WSPF, a maximum-security prison. The defendants are or were administrative officials at the prison. Jerome Sweeney was the security director until he was replaced by Mark Kartman in May 2015. Timothy Haines was the warden at WSPF until he was replaced by Gary Boughton in March 2014. The security director administers and supervises the security program for the prison. The warden is responsible for the prison's overall administration and reviews inmate complaints.

Officers at WSPF sometimes use oleoresin capsicum spray ("OC spray" or "pepper spray") to control inmate behavior. Pepper spray is less likely to spread through the air than tear gas, and WSPF officers are not authorized to use tear gas indoors.[1] Pepper spray is a liquid

---

[1] Lindsey states that the pepper spray formula used at WSPF includes tear gas, Dkt. 64, ¶ 7, but the record does not support this. Dkt. 42-13. The documents provided to me show that although WSPF uses dispensers that are capable of firing several different formulas, the only

made with oil derived from red peppers. Direct exposure to pepper spray causes temporary discomfort, blurred vision, watery eyes, swelling, coughing, and shallow breathing. Bystanders who are not directly exposed to pepper spray may experience "secondary exposure." Secondary exposure causes the same effects, but not as severely as direct exposure.

WSPF has policies controlling officer use of pepper spray. Pepper spray is used only after other attempts to control inmate behavior have failed. Before an officer may use pepper spray, he or she must receive authorization from the security director. If the security director approves the use of pepper spray, then the officers follow a standard procedure that involves turning off the ventilation system to limit the propagation of pepper spray beyond the area of intended use.

WSPF is divided into separate housing units, and each unit is further divided into ranges. Each unit has ventilation controls that allow officers to control the ventilation of individual ranges. The ventilation system at WSPF includes two vents in every cell. During normal operation, one vent exhausts air out from the cell and one vent supplies fresh air into the cell. When a supervisor believes that pepper spray is likely to be used, the supervisor turns off the ventilation system in that unit. No air moves through either vent. Officers may then use pepper spray to regain control of an unruly inmate. After order has been restored, the ventilation system is turned back on for most of the unit. But in cells in the range where pepper spray was used, the ventilation system is set to exhaust-only. Stale air is blown out of the cell, but no fresh air is blown into the cell. After the air is free from pepper-spray residue, the

---

formula being used indoors at WSPF is pepper spray.

ventilation system is switched back to normal in-and-out operation. This procedure is meant to limit the amount of pepper spray that spreads to bystanders.

Lindsey claims that every time pepper spray is used in his unit, the ventilation system pushes the pepper spray through the air ducts and into nearby cells. Dkt. 43, ¶¶ 17–19. Defendants dispute this claim, and argue that no air blows into the cells when the ventilation system is set to exhaust-only. Dkt. 56, ¶¶ 17–19. I agree with defendants that the ventilation system is set to exhaust-only after a pepper spray incident. Dkt. 43-16, ¶¶ 2–4. But viewing the facts in the light most favorable to Lindsey, this procedure does not fully stop the spread of pepper spray. Several prisoners provide declarations stating that after the ventilation system turns on they experience the effects of pepper spray. Dkts. 44–50. And defendants do not dispute that inmates are experiencing secondary exposure to pepper spray.

When pepper spray is used on other inmates in Lindsey's unit, Lindsey starts coughing and choking, and has trouble breathing.[2] Other inmates in the unit suffer from similar symptoms. Dkts. 44–50. Defendants are aware of the inmates' complaints. Dkt. 56, ¶ 24; Dkt. 55, ¶¶ 46, 53. So after every pepper-spray incident, officers go through the unit and offer medical treatment and decontamination showers to any inmates who request it.[3]

Lindsey is asthmatic, and pepper spray exposure can trigger an acute asthma attack in asthmatic inmates. But nothing in the record shows that Lindsey suffered anything more than

---

[2] Defendants dispute the severity of Lindsey's symptoms, Dkt. 56, ¶ 23, but defendants provide no evidence to dispute Lindsey's characterizations.

[3] Lindsey claims that officers are not checking on prisoners as required by policy, Dkt. 64, ¶ 32, but Lindsey provides no evidence to support this fact. Furthermore, Lindsey was not allowed to proceed on his claim for denial of medical care. Dkt. 9.

a temporary reaction to the pepper spray. Nor has any other inmate suffered from severe secondary medical issues as a result of pepper spray use.

Officers used pepper spray at least seven times in or near Lindsey's unit between February, 2014, and April, 2017.[4] Lindsey was not directly involved in any of the incidents. In each instance, officers were responding to an out-of-control inmate or a threat to inmate safety.[5] For example, on February 21, 2014, and June 25, 2014, inmates attempted suicide. Dkt. 55, ¶¶ 43, 45, 56. In both instances, officers used pepper spray to subdue the suicidal inmate after other attempts to stop the suicide attempt had failed. On June 12, 2014, and May 13, 2015, inmates began acting aggressively towards officers. Dkt. 55, ¶¶ 51–52, 59–60. Officers used pepper spray to subdue the aggressive inmates. And on May 30 and 31, 2016, one inmate repeatedly covered his cell windows with paper. *Id.* ¶¶ 61–75. On the first day, officers resorted to pepper spray after attempts to order the inmate to clear his windows were unsuccessful. On the second day, the inmate again covered his windows, refused officer orders, and covered his face with cloth in an effort to fight back against the officers. Pepper spray was used to regain control of the inmate.

---

[4] Lindsey alleges that there were nine different incidents, but only seven are documented in the record. Dkt. 55 ¶¶ 43–86. The exact number of incidents does not matter for the purposes of my decision.

[5] My knowledge of these events is based on defendants' proposed findings of fact. Dkt. 55, ¶¶ 43–86. Lindsey does not materially dispute defendants' representations, except for a general statement that all of defendants' proposed findings after paragraph 55 are "immaterial and irrelevant." Dkt. 64, ¶¶ 43–56. As I have previously explained to Lindsey, he must individually respond to every proposed finding that he disputes. *Lindsey v. Esser*, No. 14-cv-166, Dkt. 57 (W.D. Wis. Sep. 2, 2015). Where Lindsey does not respond to a proposed finding, I accepted the finding as undisputed.

There is no genuine dispute that in every instance of pepper spray use, officers begin with verbal warnings before resorting to force. And officers used only the amount of pepper spray necessary to subdue the offending inmate. Officers never used more than three bursts of pepper spray in any single incident that Lindsey cites.

ANALYSIS

Summary judgment is appropriate if the material facts are not genuinely disputed and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court looks "to the burden of proof that each party would bear on an issue at trial," and then requires that party to establish a genuine issue of material fact. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment against that party is appropriate. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatlovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). The court reviews the cross-motions "construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

A. **Lindsey's conditions-of-confinement claim**

To succeed on his conditions-of-confinement claim, Lindsey must prove two elements: (1) a deprivation that is so serious that it denies "the minimal civilized measure of life's necessities"; and (2) prison officials' deliberate indifference to that deprivation. *Gray v. Hardy*,

826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Because Lindsey cannot establish either element, the defendants are entitled to summary judgment on the conditions of confinement claim.

Because Lindsey has not shown that the application of pepper spray was itself unwarranted in any of the incidents, Lindsey's claim boils down to an allegation that defendants are deliberately indifferent to the inadequate ventilation of his cell during pepper spray use. Poor ventilation could violate the constitution if it results in air quality that poses a substantial risk to inmates' health or safety. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (inmate stated a claim based on environmental tobacco smoke that aggravated his asthma); *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (air contaminated with fiberglass dust posed a serious medical risk). But not all environmental irritants pose constitution-level dangers because prison conditions can be uncomfortable without violating the constitution. *Farmer*, 511 U.S. at 833–34. In evaluating conditions-of-confinement claims based on environmental issues, courts consider both the severity of a condition and its duration, as well as available means of mitigating the condition. *See, e.g., Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) (severe, enduring cold without adequate clothing or blankets would be unconstitutional if defendants were deliberately indifferent to it).

Courts in this circuit, and others, have held that exposure to pepper spray does not ordinarily create a substantial risk to inmates' health. A well-reasoned opinion from the Northern District of Illinois collects cases holding that even direct exposure to pepper spray typically results in severe but temporary discomfort that does not pose a long-term health risk. *Boyce v. McKnight*, No. 14-cv-418, 2015 WL 8778330, at *10–11 (N.D. Ill. Dec. 15, 2015). Indirect exposure to pepper spray can also cause discomfort, but that discomfort likewise does

7

not pose a serious medical need. *Id. (*citing *Trotter v. Kingston*, No. 05-c-1032, 2007 WL 984089, at *6 (E.D. Wis. Mar. 27, 2007).

So the issue here is whether the indirect exposure to pepper spray somehow caused Lindsey to suffer an atypically serious health problem. But Lindsey adduces no evidence that he or any other inmate suffered from serious health problems as a result of secondary exposure. These incidents exposed Lindsey only to the type of temporary discomfort that many courts have held to be insufficient to establish a serious medical need. On the record before the court, no reasonable juror could find that the ventilation in Lindsey's cell posed a substantial risk to Lindsey's health or safety, even after the use of pepper spray on a nearby inmate.

Nor can Lindsey establish that defendants were deliberately indifferent to Lindsey's exposure to pepper spray. WSPF officials made reasonable efforts to minimize bystander exposure to harmful chemical agents. WSPF uses liquid pepper spray instead of tear gas, which would more readily propagate to other cells. And the ventilation procedure is a reasonable attempt to keep the pepper spray from spreading. For the purposes of defendants' motion, I accept that the ventilation procedure does not eliminate bystander exposure to pepper spray, and that defendants knew that. But there is no evidence to suggest that defendants knew of an alternative procedure would work better, or that the ventilation procedure actually exposed Lindsey to more secondary pepper spray than he would have been otherwise. And because Lindsey has not established that he suffered a serious medical need as a result of his indirect exposure, it follows that he cannot establish that defendants knew of, and yet disregarded, a serious medical need.

Exposure to pepper spray is irritating and unpleasant, but "[p]rison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel

8

and unusual punishment." *Dixon*, 114 F.3d at 642. Only extreme deprivations raise constitutional conditions-of-confinement issues. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Lindsey's temporary exposure to pepper spray does not meet this high bar.

**B. Lindsey's excessive-force claim**

The Eighth Amendment prohibits the use of excessive force on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837–38 (7th Cir. 2001). For an excessive-force claim, the core question is whether force was used "in a good-faith effort to maintain or restore discipline," or "maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Because Lindsey cannot prove that defendants acted maliciously when they authorized the use of pepper spray, defendants are entitled to summary judgment on the excessive force claim, too.

Under the Eighth Amendment, pepper spray may be used in limited quantities when reasonably necessary to subdue, or maintain control over, an inmate. *Trotter*, No. 05-C-1032, 2007 WL 984089, at *4 (E.D. Wis. Mar. 27, 2007) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)). But the use of pepper spray violates the Eighth Amendment when used in quantities greater than necessary to maintain discipline or "for the sole purpose of punishment or the infliction of pain." *Id.*; *Barrows v. Blackwell*, No. 13-cv-1483, 2016 WL 1122838, at *5 (C.D. Ill. Mar. 22, 2016).

Bystander exposure to pepper spray is analyzed under the same legal test. Even when bystanders do nothing to necessitate the use of pepper spray, there is no constitutional violation unless officers are shown to have acted maliciously and with the intent to harm. *Clement v. Gomez*, 298 F.3d 898, 903–04 (9th Cir. 2002); *Boyce*, 2015 WL 8778330, at *7 (citing *Hudson*, 503 U.S. at 7). Negligence does not create an excessive force claim. *Boyce*, 2015

9

WL 8778330, at *7; *see also Redmond v. Crowther*, 882 F.3d 927 (10th Cir. 2018) (officers did not violate constitution when they deployed tear gas next to an intake vent and accidentally gassed a whole wing of the prison, because the officers did not intend to gas the prisoners).

In this case, defendants are entitled to summary judgment on the excessive force claim because no reasonable jury could find that defendants acted with malicious intent. In every instance, officers were attempting to restore prison discipline and used only the amount of pepper spray that was necessary to regain order. And Lindsey does not dispute that defendants were responding to genuine threats and were targeting other inmates. Unfortunately, the pepper spray spread to Lindsey's cell and Lindsey was affected too. But because Lindsey cannot show that officers intended to harm Lindsey with the pepper spray, his excessive force claim fails.

ORDER

IT IS ORDERED that:

1. Plaintiff Carlos Lindsey's motion to compel discovery, Dkt. 38, is DENIED.
2. Plaintiff Carlos Lindsey's motion for summary judgment, Dkt. 41, is DENIED.
3. Defendants Gary Boughton, Timothy Haines, Mark Kartman, and Jerome Sweeney's motion for summary judgment, Dkt. 54, is GRANTED.
4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered August 10, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge